**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ALEX FERRER,**

                        **Petitioner,**

          **vs.**                                                **9:05-CV-1010**
                                                                       **(NAM)**

**SUPERINTENDENT,**

                        **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

APPEARANCES:                              OF COUNSEL:

Alex Ferrer
No. 02-B-1853
Southport Correctional Facility
Box 2000
Pine City, NY 14871
Petitioner, *pro se*

Hon. Andrew Cuomo                         Frederick H. Wen, Esq.
Office of the Attorney General            Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271
Attorney for Respondent

**Norman A. Mordue, Chief United States District Judge**

               **MEMORANDUM-DECISION AND ORDER**

**I.      Background**

        **A.      State Court Proceedings**

        The state court records reflect that at approximately 2:30 a.m. on August 21, 2001,

Margaret Frost was awoken by an ambulance outside her home in Binghamton, New York.  *See*

Transcript of Suppression Hearing (4/17/02) ("Suppression Tr.") at pp. 28-29.  As she woke up,

she noticed an individual standing in her bedroom, approximately ten feet away from her.  *Id.* at

p. 29.  When she confronted him, he put a jacket over his head and flashed a light in her eyes.  *Id.* at pp. 29-30.  She then informed him that she was going to call the police, and, as a result, he ran out of the residence through its back door.  *Id.* at p. 31.

After he fled, Frost discovered that several items from her home had been misplaced or missing, including a ceramic bowl and $50.00 from her purse.  *Id.* at pp. 41-43.  She promptly called the police, and, when law enforcement officials arrived, they discovered a backpack that contained numerous documents bearing the name of petitioner, *pro se* Alex Ferrer on Frost's front porch.  *Id.* at p. 6.  Ferrer was then identified as a suspect, and on August 24, 2001, the police located him and brought him to the police station for questioning.  *Id.* at pp. 8-9.  Upon arriving at that location, he was advised of his *Miranda* rights.[1]  Suppression Tr. at p. 11.  He then indicated that he was willing to talk with the officers without the benefit of counsel, and eventually admitted his involvement in the incident which occurred at Frost's residence.  *Id.* at pp. 15-19.

By Indictment Number 01-619, a Broome County grand jury charged Ferrer with one count of burglary in the second degree, contrary to N.Y. Penal Law § 140.25(1)(d).

On April 17, 2002, Broome County Court Judge Patrick H. Mathews presided over a suppression hearing, after which he issued a decision which denied Ferrer's suppression motion in all respects.  *See* Suppression Tr. at p. 82.

Ferrer's jury trial on the charge commenced on April 23, 2002, with Judge Mathews presiding.  *See* Transcript of Trial and Change of Plea (4/23/02) ("April Tr.") at p. 2.  After the jury was selected, a luncheon recess was held, during which time the prosecutor received

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

permission from the trial court to compare a palm print found on Frost's ceramic bowl with a palm print taken from Ferrer.  April Tr. at pp. 73-74.  A comparison of those two prints yielded a "positive match."  *Id*. at pp. 74-75.  Upon being advised of that development, Ferrer indicated to his attorney that he wished to accept the prosecutor's previous offer to allow Ferrer, a second violent felony offender, to enter a guilty plea to the charge of attempted second degree burglary in satisfaction of the charge against him in the Indictment, as well as a potential perjury charge. *Id.* at p. 79-80.

The County Court then engaged in a colloquy with him regarding the proposed plea, after which Judge Mathews accepted Ferrer's guilty plea to the attempted burglary charge.[2]  *Id.* at p. 83.

On May 30, 2002, the date on which Ferrer was scheduled to be sentenced, Judge Mathews, after having reviewed various *pro se* requests of Ferrer, ordered him to undergo a psychiatric examination pursuant to New York Criminal Procedure Law ("CPL") § 730.30.   That exam was conducted by two psychiatrists, and, although the contents of those reports were not placed on the trial record, the record reflects that Ferrer was found to be competent.  *See* Decision and Order of Judge Mathews (6/9/03) ("June, 2003 Decision") at p. 5.

On July 30, 2002, Ferrer appeared with counsel for sentencing.  *See* Transcript of Sentencing of Alex Ferrer (7/30/02).  At that proceeding, Ferrer claimed that he was not guilty of the crime to which he pleaded guilty because his palm print could not have been on the ceramic bowl, which he claimed had fallen on the floor.  *Id.* at p. 2.  Notwithstanding that comment, the court sentenced Ferrer, pursuant to the terms of the plea bargain, to a determinate term of five

---

[2] The substance of that colloquy is discussed more fully *post* in conjunction with petitioner's challenge to the validity of his plea.

years imprisonment, followed by five years of post-release supervision.  *Id.* at p. 3.

On March 10, 2003, before his appeal was perfected, Ferrer filed a *pro se* motion to vacate his conviction pursuant to CPL § 440.10.  *See* Dkt. No. 22, Exh. A ("CPL Motion").  In that application, Ferrer claimed, *inter alia*, that:  i) he was forced to testify before the grand jury in "shackles;" ii) perjurious testimony was presented to the grand jury; iii) the manner in which he was questioned was constitutionally infirm; iv) the grand jury panel lacked  "ethnic minorities;" and v) he received the ineffective assistance of trial counsel.  *See* CPL Motion.  The prosecutor opposed that application, and Judge Mathews thereafter denied such request without a hearing.  *See* June, 2003 Decision.

Ferrer's direct appeal was thereafter perfected, and, in his brief, appellate counsel argued that:  i) Ferrer was entitled to withdraw of his guilty plea because he received the ineffective assistance of trial counsel; and ii) the County Court erred by not granting Ferrer new counsel and then ordering a competency hearing under the CPL.  That appeal was opposed by the district attorney, and, after consolidating Ferrer's direct appeal with his appeal of the denial of his CPL Motion, the New York State Supreme Court Appellate Division, Third Department, unanimously affirmed both Ferrer's conviction and the denial of the CPL Motion.  *See People v. Ferrer*, 16 A.D.3d 913 (3d Dept. 2005).  Ferrer, through counsel, sought leave to appeal the Appellate Division's decision, however in a decision dated July 7, 2005, New York's Court of Appeals denied his leave application.  *People v. Ferrer*, 5 N.Y.3d 788 (2005).

### B.    This Action

Ferrer filed a *pro se* petition in this District seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 10, 2005.  Before any response to that pleading was filed by the

respondent, Ferrer filed an amended petition in which he asserts numerous grounds for relief. *See* Dkt. No. 18 ("Am. Pet.").[3]  In that pleading, Ferrer asserts that:  i) the prosecutor failed to disclose *Brady*[4] evidence to Ferrer; ii) his incriminating statement was obtained in violation of his *Miranda* rights; iii) his guilty plea was unlawfully induced and involuntarily made; iv) the district attorney suborned perjurious testimony at both the grand jury proceeding and the suppression hearing; v) he was improperly forced to testify in "shackles" before the grand jury that ultimately indicted him; vi) the panel for the grand jury was "unconstitutionally selected and impaneled;" vii) the County Court erred in refusing to grant Ferrer's motion to withdraw his plea; viii) the trial court wrongfully failed to allow Ferrer to testify in support of his claim that he was not competent to plead guilty to the charge; ix) the County Court erred by denying Ferrer his right to an allocution at his sentencing; and x) he received the ineffective assistance of trial counsel. *See* Am. Pet.; *see also* Traverse (Dkt. No. 26) ("Traverse"); Memorandum of Law in Support of Amended Petition (Dkt. No. 36).

The Office of the Attorney General for the State of New York, acting on respondent's behalf, has filed a response in opposition to Ferrer's application.  Dkt. No. 22.  Attached to that response was a memorandum of law requesting dismissal of the amended petition ("Resp. Mem.").  In his memorandum, respondent claims that Ferrer is procedurally barred from asserting some of his claims for relief and that, in any event, the claims raised in the amended petition are without merit.  *See* Resp. Mem.  After he filed his Traverse, Ferrer filed additional exhibits,

---

[3] As will be seen, some of the grounds asserted in the petition are legally redundant or allege multiple legal theories in support of a particular ground for relief.  After having reviewed the submissions provided by Ferrer, the Court has found it appropriate to address the merits of his petition by reference to the legal theories raised by petitioner, rather than by the particular ground in which he has asserted such claims.

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

together with a supplemental letter and brief in further support of his amended pleading. *See* Dkt.

Nos. 29, 33 and 34.  This Court has considered the above-referenced documents in conjunction

with its review of the amended petition, which is currently before this Court for disposition.[5]

**II.**    **Discussion**

      **A.**    **Standard of Review Applicable to Ferrer's Claims**

      The April, 1996 enactment of the Antiterrorism and Effective Death Penalty Act

("AEDPA") brought about significant new limitations on the power of a federal court to grant

habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard,

the Second Circuit noted in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that:  (1) was "contrary to, or
> involved an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United States"; or
> (2) was "based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding."

*Rodriguez*, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403

F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v.*

*LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of this

test, the Second Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of
> a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but nevertheless
> comes to a different conclusion than the Court did.  [*Williams v.*
> *Taylor*, 529 U.S. 362,] at 405-06 [2000]; *Loliscio v. Goord*, 263
> F.3d 178, 184 (2d Cir. 2001).... [A] state court's decision is an

---

[5] In accordance with General Order No. 32, this Court rescinds the prior reference of this action to
Magistrate Judge Gustave J. DiBianco.

> "unreasonable application of" clearly established federal law if the
> state court "identifies the correct governing legal principle from
> [the Supreme] Court's decisions but unreasonably applies that
> principle to the facts" of the case before it. *Williams*, 529 U.S. at
> 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d

147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v.

Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). Objectively unreasonable in this context means

"'some increment of incorrectness beyond error is required'" in order to grant a federal habeas

application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Francis S.*, 221 F.3d at

111).

**B.    Review of Ferrer's Claims**

**1.    *Brady* Violation**

Ferrer argues that his conviction must be overturned because the prosecutor withheld

evidence that was favorable to the defense until after the jury was selected, thereby violating his

right to a fair trial. *See* Am. Pet., Ground One. Specifically, he asserts that the prosecutor

withheld evidence concerning the palm print found on the ceramic bowl "for nine (9) months and

suddenly mention[ed] it for the first time ever after the selection of the jury." Traverse; Point

Three.

In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence

favorable to an accused upon request violates due process where the evidence is material either to

7

guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  To prove a *Brady* violation, a habeas petitioner must establish that:  1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding.  *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

In discussing the first element of a *Brady* claim, the Second Circuit has noted that "[e]vidence is favorable to the accused if it either tends to show the accused is not guilty or impeaches a prosecution witness."  *Boyette*, 246 F.3d at 90 (citing *United States v. Bagley*, 473 U.S. 667, 674 (1985)); *see also Strickler*, 527 U.S. at 281.

In the case *sub judice*, the evidence that petitioner asserts was wrongfully withheld by the prosecution – the palm print found on the victim's ceramic bowl – ***inculpated***, rather than exculpated, Ferrer.  *See* April Tr. at pp. 74-75.  Thus, he has plainly not established that the subject evidence was favorable to his defense.

A habeas petitioner must satisfy all three elements of a *Brady* claim to prevail on such a claim.  *Hughes v. Phillips*, 457 F.Supp.2d 343, 359 (S.D.N.Y. 2006) (citing *Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001)).  Since Ferrer has not demonstrated the first required element of his *Brady* claim, the Third Department's decision denying this claim, *see Ferrer*, 16 A.D.3d at 914-15, is neither contrary to, nor represents an unreasonable application of, *Brady* and its progeny.  Petitioner's *Brady* claim is therefore denied.

### 2.   Admissibility of Incriminating Statement

Ferrer also claims that his guilty plea must be vacated because it was the product of an

illegally obtained confession.  *See* Am. Pet., Ground Two; Traverse, Point One.  In support of

this assertion, Ferrer asserts that law enforcement officials were aware that he was represented by

counsel in another criminal matter at the time he was questioned, but that they failed to consult

with such attorney before questioning Ferrer, and instead resorted to "coercion, deception and

trickery" to extract a confession from him.  Am. Pet., Ground Two; Traverse, Point One.

Petitioner also asserts that he had "mental issues," and was in need of "psychiatric medication"

while being questioned, but that those facts were ignored by the police.  *Id.*

Under *Miranda*, "a person questioned by law enforcement officers after being 'taken into

custody or otherwise deprived of his freedom of action in any significant way' must first 'be

warned that he has a right to remain silent, that any statement he does make may be used as

evidence against him, and that he has a right to the presence of an attorney, either retained or

appointed.'"  *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at

444).  In considering whether a party has voluntarily provided a statement to the police, courts

are to consider the "totality of the circumstances," including evidence of police coercion, the

length of the interrogation, the defendant's maturity and education, and whether the police failed

to advise the defendant of his rights to both remain silent and to have counsel present during the

custodial interrogation.  *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993); *see also Colorado v.

Spring*, 479 U.S. 564, 573 (1987).[6]  In determining whether a statement was coerced, a court must

"examine[] 'whether a defendant's will was overborne' by the circumstances surrounding the

giving of a confession[,] ... tak[ing] into consideration 'the totality of all the surrounding

---

[6] A coerced or otherwise involuntary statement may never be used for any purpose:  "*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law...."  *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (emphasis in original).

9

circumstances – both the characteristics of the accused and the details of the interrogation.'"
*Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412
U.S. 218, 226 (1973)).  Under the AEDPA, a state court's factual findings at a suppression
hearing are presumed to be correct, and the petitioner has the burden of overcoming that
presumption by clear and convincing evidence.  *See Sorto v. Herbert*, No. 01-CV-2955, 2004 WL
2852358, at *2  (E.D.N.Y. Dec. 13, 2004) (citing 28 U.S.C. § 2254(e)(1)); *James v. Walker*, No.
99-CV-6191, 2003 WL 22952861, at *6 (E.D.N.Y. Aug. 28, 2003), *aff'd*, 2004 WL 2496742, at
*6 (2d Cir. 2004).  However, "ultimately legal questions, such as whether a defendant has
effectively waived his federal constitutional rights in a proceeding, are governed by federal
standards."  *Oyague v. Artuz*, 393 F.3d 99, 104 (2d Cir. 2004).

This Court has reviewed the transcript of the suppression hearing over which Judge
Mathews presided.  *See* Suppression Tr.  The evidence adduced at the suppression hearing
supports the trial court's conclusion that Ferrer voluntarily agreed to provide the incriminating
statement to the police after he was advised of his *Miranda* rights.[7]  *See*, *e.g.*, Suppression Tr. at
pp. 80-81.  Nor has he established that he was threatened, coerced, tricked or otherwise
improperly persuaded into providing the incriminating statement.  Since the salient evidence
demonstrates that Ferrer voluntarily waived his *Miranda* rights when he provided the statement
to law enforcement officials, *e.g.*, *Oyague*, 393 F.3d at 104, this Court finds that the Appellate
Division's decision rejecting this claim, *see Ferrer*, 16 A.D.3d at 914-15, is nether contrary to,
nor represents an unreasonable application of, *Miranda* and its progeny.  Ferrer's *Miranda* claims

---

[7] This Court also agrees with Judge Mathews that Ferrer was not in custody at the time he was originally
questioned by law enforcement officials, and that therefore he could properly be questioned (under New York law)
by the police even if they were aware that he was represented by an attorney on an unrelated criminal matter.  *E.g.*,
*People v. Bing*, 76 N.Y.2d 331 (1990) (*passim*).

are therefore denied.

      **3.**      <u>**Guilty Plea**</u>

      **a.**      <u>**Validity of Guilty Plea**</u>

Ferrer also asserts that his guilty plea was unlawfully induced and not voluntarily made. *See* Am. Pet., Ground One. In a related claim, Ferrer argues that his guilty plea was "illegal" because the Court never specifically asked him whether he understood the charge that had been brought against him, or whether he was under the influence of narcotics at the time of the plea. *See* Traverse, Point Four.

The Due Process Clause of the United States Constitution requires an affirmative showing that a defendant's plea is entered both knowingly and voluntarily before the trial court may accept the plea. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993); *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998), *cert. denied*, 524 U.S. 956 (1998). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (plea is valid when it is both knowingly and voluntarily made). On collateral review, a court may only vacate a guilty plea where the petitioner can establish that the plea was not made knowingly and voluntarily. *See Salas*, 139 F.3d at 324; *Tejeda v. United States*, No. 99 CIV. 2948, 1999 WL 893275, at *4 (S.D.N.Y. Oct. 18, 1999); *Ramirez v. Headley*, No. 98 CIV. 2603, 1998 WL 788782, at *5 (S.D.N.Y. Nov.10, 1998).

The transcript of the April proceeding at which Ferrer ultimately pleaded guilty to the attempted burglary charge reveals the following:

MR. FRITZSCH:[8] He's indicating he wishes to take the offer, your Honor.

THE COURT: He does want to take the offer?

MR. FRITZSCH: Yeah.

THE COURT: Okay.  All right....  Do you want to step up before the bench?  All right. This matter is before the bench now.  And as I understand the offer, the People are willing to accept an offer to attempted burglary in the second degree and that would be in full satisfaction of this indictment and it would cover other matters presently pending, as well as a potential perjury charge.  What are the other matters pending as you know them?

MR. FERRI:[9] Judge, there's a pending felony for assault in the second degree, as well as some misdemeanors attached to it out of an incident that occurred at the jail.  Additionally, there's several misdemeanors pending in the City of Binghamton.  I know there's two petit larcenies pending.  I think there might be a criminal possession of stolen property, I believe another couple charges pending, as well.  There's also, he's doing a sentence on two violations of conditional discharge.

\* \* \* \* \*

THE COURT: Then there would be potential for [a] perjury prosecution both on the grand jury testimony and the suppression hearing testimony?

MR. FERRI: That's correct, Judge.

---

[8] Ferrer's trial attorney was Craig Fritzsch, Esq.

[9] The Assistant District Attorney who prosecuted the case was Stephen Ferri, Esq.

12

| | |
|---|---|
| THE COURT: | And you're willing to take one plea to attempted burglary in the second degree to cover all these matters? |
| MR. FERRI: | Yes, as long as the mandatory sentence of five years determinate is imposed. |
| THE COURT: | And there would be a post-release supervision of five years? |
| MR. FERRI: | Yes. |
| THE COURT: | Now, Mr. Ferrer, is this what you want to do today? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And do you understand that you're not required to plead guilty, no one can force you to plead guilty? Do you understand that? |
| THE DEFENDANT: | Yes. |
| THE COURT: | If you plead guilty today, you're going to give up a number of valuable rights under the law. You're going to give up your right not to incriminate yourself and your right to remain silent, your right to have a trial, trial by a jury, if you wanted it.  At a trial, the District Attorney would have to call witnesses, introduce evidence and prove you're guilty beyond a reasonable doubt, all of the witnesses against you would be cross-examined by your lawyer, you could call witnesses and you could testify. Now, if you plead guilty, you give up all these rights.  Do you understand that? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Now, the allegation against you is that on the 21st day of August, 2001, you did knowingly |

13

enter, remain unlawfully in a dwelling with intent to commit a crime in the dwelling, and the allegation is you went into the residence of [Ms.] Frost ... and you went in there with the intent to commit a crime inside.  Do you admit those facts?

THE DEFENDANT:          Yes.

THE COURT:          Are you pleading guilty freely and voluntarily?

THE DEFENDANT:          Yes.

THE COURT:          Has anyone forced you or pressured you in any way in order to get you to plead guilty?

THE DEFENDANT:          No.

THE COURT:          And do you consider yourself guilty of this crime as I've just discussed the facts with you?

THE DEFENDANT:          Yes.

THE COURT:          Has anyone promised you anything other than what we've discussed here in court today to get you to plead guilty?

THE DEFENDANT:          No.

THE COURT:          And are you –

MR. FRITZSCH:          Your Honor, he did have a question of me at counsel table as to what the effect of the state prison sentence would be on the consecutive county years that he's serving pursuant to the sentence from Judge Lehmann.  It's my understanding that the county sentences

14

would merge into the state sentence.  And I wanted to put that on the record, that he did have that question of me, your Honor.

THE COURT: All right. That is correct, they will merge. All right?
Now, are you satisfied with Mr. Fritzsch, the time he's taken to discuss the case with you and the advice that he's given you?

THE DEFENDANT: Yes.

THE COURT: And you consider yourself guilty of this crime as I've discussed the facts with you and as you heard Ms. Frost testify to the facts, that is, that you went into the home without authority or permission and you went in there with the intent to steal something.

THE DEFENDANT: Yes.

THE COURT: Do you consider yourself guilty of this crime?

THE DEFENDANT: Yes.

THE COURT: And you engaged in that conduct?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions of me before I decide whether to accept the plea from you or not?

THE DEFENDANT: No.

THE COURT: All right. I'm willing to accept your offer to plead guilty. With regard to the crime of attempted burglary in the second degree, how do you plead?

15

THE
DEFENDANT:          Guilty.

THE COURT:          I'm going to adjourn sentencing now....

April Tr. at pp. 78-84.

The above establishes that the County Court engaged in an extensive colloquy with Ferrer

wherein he was fully apprised of the charges against him, the rights he was waiving by pleading

guilty, as well as the benefits Ferrer would obtain through his guilty plea.  Nothing before the

Court suggests that the plea was not knowingly, intelligently and voluntarily made.

Although petitioner now faults the trial court for not expressly asking Ferrer whether he

understood the charges that were being brought against him, and whether he was under the

influence of narcotics, *see* Traverse, Point Four, these claims:

> appear[] to overlook the firmly established principle that "there is no
> specific series of questions that a state court judge must ask in the
> course of a plea allocution in order to satisfy due process.  Due
> process requires only that the courts provide safeguards sufficient to
> insure the defendant what is reasonably due in the circumstances."

*White v. Walker*, No. 01-CV-0238, 2007 WL 169702, at *14 (N.D.N.Y. Jan. 18, 2007) (Sharpe, J.,

adopting Report-Recommendation of Magistrate Judge David E. Peebles) (quoting *Hanson v.*

*Debois*, No. 03 CIV. 5671, 2004 WL 540267, at *6 (S.D.N.Y. Feb. 13, 2004)) (other citation

omitted).  As Magistrate Judge Peebles noted in *White*, there is no "requirement that County Court

judges follow a uniform mandatory catechism of pleading defendants."  *White*, 2007 WL 169702,

at *14 (internal quotation marks and citations omitted).

Ferrer's responses to the questions asked of him at the above proceeding established, *inter*

*alia*, that he:  i)  was aware of the details of the plea agreement into which he had entered with the

District Attorney and the numerous criminal matters that would be resolved by the guilty plea

16

(April Tr. at pp. 78-80); ii) knew the length of the prison sentence he would receive if his guilty plea was accepted by the court (*id.* at p. 79); iii) was aware that such sentence also included a five year term of post-supervision release (*id.* at pp. 79-80); iv) was waiving numerous rights by pleading guilty to the charge (*id.* at pp. 80-81); v) admitted that he unlawfully entered Frost's residence on August 21, 2001 with the intent to commit a crime therein (*id.* at p. 81); vi) was freely and voluntarily pleading guilty (*id.*) and vii) was, in fact, guilty of the crime.  *Id.*  Ferrer's responses to the questions posed to him by Judge Mathews throughout the above-cited colloquy, as well as his specific inquiry as to whether the agreed upon sentence would run concurrent with an unrelated sentence that had already been imposed on him (*see id.* at p. 82), belie his current suggestion that he was under the influence of narcotics or otherwise incapable of knowingly, intelligently and voluntarily entering into the guilty plea.[10]  Thus, Ferrer has not established that the Third Department's decision denying this claim, *see Ferrer*, 16 A.D.3d at 914-15, is either contrary to, or represents an unreasonable application of, relevant Supreme Court precedent.  Petitioner's habeas claims challenging the validly of the plea, including those which assert that the plea was "illegal," are accordingly denied.[11]

### b.   Claims Barred in Light of Valid Guilty Plea

---

[10] Petitioner has offered no proof that he was under the influence of any narcotics on the day he entered the plea.

[11] Ferrer's supplemental claim that the trial court's failure to specifically reference the post-release supervision aspect of his sentence at the time of the guilty plea rendered the plea invalid, *see* Dkt. No. 36, is meritless.  As noted above, Ferrer plainly acknowledged that aspect of the plea bargain at the colloquy cited above.  *See* April Tr. at pp. 79-80.  Regardless, because "there is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea," *Sanchez v. Keller*, No. 06-CIV-3370, 2007 WL 4927791, at *7 (S.D.N.Y. Dec. 4, 2007) (Report-Recommendation), *adopted*, 2008 WL 461593 (S.D.N.Y. Feb. 15, 2008), Ferrer is unable to demonstrate that Judge Mathews unreasonably applied Supreme Court precedent in denying this claim challenging the validity of his guilty plea.  *See* Attachment to Dkt. No. 34, *see, e.g.*, *Sanchez*, 2007 WL 4927791, at *8.

In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court observed:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett*, 411 U.S. at 267; *see Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974) ("a person complaining of ... antecedent constitutional violations ... is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases") (internal quotations and citations omitted).

As noted above, this Court has concluded that Ferrer's guilty plea is valid.  Consequently, he is prohibited from obtaining habeas relief on claims that arise out of matters that occurred prior to the entry of that plea.  Therefore, his claims that the detectives who testified before the grand jury and at the suppression hearing provided perjurious testimony, *see* Traverse, Point Two, must be denied.  Additionally, his ground for relief in which he argues that he was improperly forced to testify in shackles before a grand jury that was unconstitutionally selected and impaneled, *see* Am. Pet. at attached p. 7, is similarly barred in light of the valid guilty plea into which he entered.  *See E.g.*, *Alston v. Ricks*, No. 01 Civ. 9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan. 7, 2003) ("a guilty plea extinguishes the ability of a habeas petitioner to raise a claim regarding misconduct before a grand jury").

### 4.   Denial of Motion to Withdraw Guilty Plea

Petitioner additionally argues that the County Court wrongfully denied his timely request to withdraw his guilty plea.  *See* Petition, Ground Four; Traverse, Point Five.

A state judge's denial of a motion to withdraw a guilty plea is generally not subject to habeas corpus review unless the plea was not entered intelligently or voluntarily. *Martuzas v. Reynolds*, 983 F.Supp. 87, 94 (N.D.N.Y. 1997) (Pooler, D.J.) (citation omitted); *Coddington v. Langley*, 202 F.Supp.2d 687, 703 (E.D.Mich. 2002) ("there is no federal right to withdraw one's guilty plea, so it is not a cognizable claim in a petition for habeas corpus without a showing that petitioner was denied fundamental fairness") (citation omitted). Moreover, in considering such a habeas claim, federal courts must consider the fact that the decision of whether to allow a defendant to withdraw a guilty plea is committed to the discretion of the trial judge. *Heron v. People, State of New York*, No. 98 Civ. 7941, 1999 WL 1125059, at *6 (S.D.N.Y. Dec. 8, 1999).

In the present case, Ferrer has not presented either evidence or persuasive arguments which suggest that he is innocent of the charge to which he pleaded guilty.

Ferrer's post-plea claims of innocence contradict the statements that he made under oath at the guilty plea hearing in which he admitted to the crime. Those sworn statements "carry a strong presumption of verity," and a court reviewing a belated claim of innocence must draw all permissible inferences in favor of the government and against the defendant. *See United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Additionally, the trial judge who addressed the defendant during the course of taking the guilty plea, and who had benefit of observing his demeanor at that time, is in a better position than a federal district court, reviewing a cold record, to judge the credibility of a belated claim of innocence which contradicts a prior, valid guilty plea. *Maher*, 108 F.3d at 1531; *see also United States v. Lasky*, 23 F.Supp.2d 236, 243 (E.D.N.Y. 1998).

As discussed more fully above, this Court has determined that Ferrer entered into that plea

knowingly, intelligently and voluntarily.  Since he has not presented this Court with persuasive evidence that supports his claim that he is innocent of the crime to which he pleaded guilty, he is not entitled to federal habeas relief on his claim that the trial court wrongfully denied petitioner's application to withdraw his guilty plea.

### 5.   Competency Hearing

Petitioner next argues that on May 30, 2002, the County Court directed Ferrer to undergo a mental competency exam pursuant to CPL § 730, but that after the court received the medical findings relating to that exam, it "neglected to address the issue on the record or allow the petitioner an opportunity to prove or disprove his competency."  Traverse, Point Six.

The record establishes that the County Court *sua sponte* ordered Ferrer to undergo a psychiatric examination after his plea and before he was sentenced after that court received correspondence from Ferrer following his guilty plea.  *See* Transcript of Proceeding before Judge Mathews (5/30/02) at p. 2.  Two psychiatrists then conducted independent examinations of Ferrer, and both of those doctors found that he was not an incapacitated person.  *E.g.*, *Ferrer*, 16 A.D.3d at 914.

CPL § 730.30, the statute under which the psychiatric examination of Ferrer was ordered (*see Ferrer*, 16 A.D.3d at 914), provides, in salient part:

> When the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the defendant is not an incapacitated person, the court ***may***, on its own motion, conduct a hearing to determine the issue of capacity....  If no motion for a hearing is made, the criminal action against the defendant must proceed.

CPL § 730.30(1) (emphasis added).  Since Judge Mathews was not required to conduct a hearing regarding Ferrer's competency under the CPL, it is patent that Ferrer is not entitled to the vacatur

of his guilty plea based upon that court's failure to conduct such hearing.

Moreover, this ground for relief appears to overlook the well-settled precept that "'[f]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.'"  *See Falas v. Phillips*, No. 03 Civ.4839, 2004 WL 1730289, at *13 (S.D.N.Y. Aug. 3, 2004) (Gorenstein, M.J.) (denying habeas claim that trial court wrongfully denied CPL § 440 motion without hearing) (quoting *Diaz v. Greiner*, 110 F.Supp.2d 225, 235 (S.D.N.Y. 2000)), *adopted*, *Falas v. Phillips*, 2005 WL 756886 (S.D.N.Y. Apr. 1, 2005); *see also Jones v. Spitzer*, No. 01 Civ. 9754, 2003 WL 1563780, at *52 (S.D.N.Y. Mar. 26, 2003) (failure to hold hearing regarding CPL motion cannot form basis for habeas relief) (citing *Diaz*) (other citations omitted); *Smith v. Lacy*, No. 01 CIV. 4318, 2002 WL 826825, at *7 (S.D.N.Y. Apr. 30, 2002) (claim that county court violated petitioner's due process rights by failing to comply with procedural requirements of CPL "lack[ed] the necessary constitutional component for federal habeas corpus review").

In light of the foregoing, Ferrer's claim that he is entitled to federal habeas relief because the trial court failed to conduct a hearing relating to petitioner's competency is unavailing.[12]

### 6.   Inadequate Allocution at Sentencing

Petitioner also argues that he was denied his right to an allocution at sentencing.  Am. Pet., Ground Five.  He specifically argues that the trial judge wrongfully deprived petitioner of

---

[12] Petitioner does not appear to claim that the trial court erred in failing to conduct a competency hearing *prior to* the entry of the guilty plea.  Any such claim would be without merit because the record established that Ferrer had the ability to consult with his lawyer with a reasonable degree of rational understanding, and possessed a rational as well as factual understanding of the proceedings against him, at the time of his plea.  *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *see also Godinez*, 509 U.S. at 401 n.12; *Pate v. Robinson*, 383 U.S. 375, 385 (1966) (due process requires that a competency hearing be held when the facts or events presented to the court raise a *bona fide* doubt regarding a defendant's competency); *Dusky v. United States*, 362 U.S. 402 (1960).

his right to "speak his mind," as well as his ability to contest errors that may have existed in the pre-sentence report provided to Judge Mathews, at the time of his sentencing.  Traverse, Point Six.

It is well settled that a federal district court "'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....'"  *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (other citation omitted)); *see also Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).

Respondent argues that Ferrer has not exhausted his claim regarding his right to an allocution at his sentencing because he failed to raise any federal claim relating to this issue in his CPL Motion.  *See* Resp. Mem. at p. 15.  Petitioner concedes this fact in his traverse.  *See* Traverse at pp. 7-8.  This claim is therefore "deemed exhausted" for purposes of petitioner's habeas application.  *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000). Although it is  "deemed exhausted," it is also procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Spence*, 219 F.3d at 170.

Federal courts may only consider the substance of procedurally forfeited claims where the petitioner can establish *both* cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court

review.[13]  *Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen*, 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *King v. Greiner*, 210 F.Supp.2d 177, 182 (E.D.N.Y. 2002) (court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence"); *Lora v. West*, No. 04Civ.1902, 2005 WL 372295, at *9 (S.D.N.Y. Feb. 17, 2005) (citations omitted); *Morales v. Sabourin*, No. 00 Civ. 8773, 2002 WL 32375006, at *11 (S.D.N.Y. Apr. 30, 2002).

Ferrer appears to suggest that he did not intend to assert his claim regarding his ability to address the court at sentencing as an independent ground for federal habeas relief.  *See* Traverse at pp. 7-8 (suggesting that he mentioned such claim because the habeas form he completed directed him to specify all grounds he had raised in state court, rather than all claims he was asserting in this federal action).  Regardless, he has plainly not established cause for his default, despite having filed various documents after the respondent noted that such claim was unexhausted.  Additionally, because this Court has concluded that Ferrer's guilty plea is valid, and no evidence before the Court suggests that he is actually innocent of the attempted burglary charge, he cannot now seek safe harbor from the denial of this ground based upon a claim of actual innocence.  Accordingly, any claim challenging the manner in which Ferrer's sentencing

---

[13] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.), *cert. denied*, 537 U.S. 955 (2002).

23

hearing was conducted must be denied as procedurally barred.

### 7.    Ineffective Assistance

In his final claim, Ferrer argues that he received the ineffective assistance of trial counsel.

*See* Am. Pet., Ground Five.  In support of this assertion, he claims that his attorney:

>  neglected to investigate the facts of the case, prior conviction,
>  mental health history, educational history, failed to file an
>  Omnibus motion, or search for drug use history.

Am. Pet., Ground Five.

The Sixth Amendment to the United States Constitution provides that:  "[i]n all criminal

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective

assistance of counsel, a habeas petitioner must show both:  i) that counsel's representation fell

below an objective standard of reasonableness, measured in the light of the prevailing

professional norms; and ii) resulting prejudice that is, a reasonable probability that, but for

counsel's unprofessional performance, the outcome of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521

(2003) ("the legal principles that govern claims of ineffective assistance of counsel" were

established in *Strickland*).

Establishing deficient performance requires petitioner to overcome a "strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance."

*Strickland*, 466 U.S. at 689; *see also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).  To

establish actual prejudice in the context of a guilty plea, petitioner must prove that "'there is a

reasonable probability that ... he would not have pleaded guilty and would have insisted on going

to trial.'"  *Roe v. Flores-Ortega*, 528 U.S. 470, 485 (quoting *Hill*, 474 U.S. at 59); *Larweth v. Conway*, 493 F.Supp.2d 662, 670 (W.D.N.Y. 2007) (citing *Hill*).

Initially, the Court notes that Ferrer's unsupported allegations that counsel's conduct was deficient are insufficient to overcome the presumption that counsel acted reasonably.  *E.g.*, *Campbell v. Greene*, 440 F.Supp.2d 125, 149 (N.D.N.Y. 2006) (McCurn, S.J.) (citations omitted).  Next, the Court notes that there is no record support for Ferrer's contention that his trial counsel was unprepared, or which supports his apparent claim that his mental health and/or drug use prevented him from effectively pleading guilty to the charge.  Petitioner's claim that no omnibus motion was filed on his behalf is belied by the fact that the trial court conducted a suppression hearing in response to defense counsel's motion.  *See*, *E.g.*, Suppression Tr. at p. 74 (prosecutor noting for the record that he "oppose[d] the defense motion to suppress the statements).  Furthermore, matters relating to Ferrer's prior convictions were addressed by defense counsel both during the Court's pretrial *Sandoval* hearing,[14] *see* Transcript of Pretrial Hearing before Judge Mathews (4/22/02), as well as at the change of plea.  *See* April Tr. Petitioner's claims alleging ineffective assistance, therefore, lack substance.

Finally, in the criminal matter below, the Appellate Division observed that trial counsel "negotiated a very favorable plea deal" for Ferrer, and was persuaded that "counsel's conduct [was] anything but ineffective."  *Ferrer*, 16 A.D.3d at 914-15.  The relatively favorable disposition of the criminal charges pending against Ferrer (as well as the potential perjury charge referenced by Judge Mathews during the plea allocution) buttresses the determination of the state courts that the conduct of Ferrer's attorney was not objectively unreasonable.  *Dunn v.*

---

[14] *People v. Sandoval*, 34 N.Y.2d 371 (1974).

*Senkowski*, No. 03-CV-0364, 2007 WL 2287879, at *10 (N.D.N.Y. Aug. 7, 2007) (McCurn) (citing *Seifert v. Keane*, 74 F.Supp.2d 199, 206 (E.D.N.Y. 1999) ("[g]iven the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient") (footnote and citations omitted), *aff'd*, 205 F.3d 1324 (2d Cir. 2000).

Ferrer has not demonstrated that there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial but-for the claimed deficiencies of his counsel.  Since he has not demonstrated that the Third Department's decision denying this appellate claim, *see Ferrer*, 16 A.D.3d at 914-15, is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny, this final claim in his amended petition must be denied.

## III. <u>Certificate of Appealability</u>

Finally, the Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[15]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since Ferrer has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

---

[15] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED** that the amended petition filed by Ferrer, as supplemented by him as noted above, is **DENIED** and **DISMISSED**, and it is further

**ORDERED** that the state court records not filed herein be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party), and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED**

Date:  July 25, 2008

Norman A. Mordue
Chief United States District Court Judge

27